

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

```
************************************
UNITED STATES, ex rel          *
MICHAEL BRANIGAN               *      Civil Action No. 02-CV-0217
                               *      NPM/GLS
        Plaintiff,             *
                               *
    v.                         *
                               *
BASSET HEALTHCARE CORP.,       *
MARY IMOGENE BASSETT HOSPITAL, *
ANDREW RAUSCHER, M.D.,         *
JAMES ANANIA, M.D., PETER      *
GENCARELLI, M.D., JONATHAN     *
GREENBERG, M.D., TIMOTHY       *
LANE, M.D., WILLIAM LEE, M.D., *
EDWARD PALMER, M.D., DEAN      *
ROBINSON, M.D., L. MICHAEL     *
NEWMAN, M.D., and other unknown *
defendants Does 1 - 20,        *
                               *
        Defendants.            *
************************************
```



---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

---

BOIES, SCHILLER & FLEXNER LLP
150 JFK Parkway, 4th Floor
Short Hills, NJ  07078
(973) 218-1111
(DSS-8580)

# TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................. 1

RELEVANT FACTS.............................................................................. 3

LEGAL STANDARD............................................................................. 8

LEGAL ARGUMENT............................................................................. 9

I.  THE AMENDED COMPLAINT FAR EXCEEDS THE
    REQUIREMENTS OF RULE 9(b) FOR A FALSE CLAIMS CASE............9

II. THE GOVERNMENT WAS DAMAGED BY DEFENDANTS'
    FRAUD.  MOREOVER, OVERPAYMENTS ARE NOT AN
    ESSENTIAL ELEMENT OF LIABILITY UNDER THE FALSE
    CLAIMS ACT..............................................................................15

III. SECTION 3731(b) OF THE FALSE CLAIMS ACT PROVIDES A
     TEN YEAR STATUTE OF LIMITATIONS PERIOD WHICH
     RELATOR HAS SATISFIED, THEREFORE RELATOR'S CLAIMS
     ARE NOT TIME BARRED.............................................................19

     A.  The Amended Complaint Relates Back to the Complaint.................22

CONCLUSION....................................................................................26

**Table of Authorities**

## Cases

Anesthesiology Affiliated  v. Sullivan, 941 F.2d 678 (8th Cir. 1991)......................................... 3, 18

Cato v. United States, 359 U.S. 989 (1959)................................................................................... 17

Court of Claims: Brown v. United States, 524 F.2d 693, 706 (Ct. Cl. 1975).............................. 18

Daniel v. American Bd. of Emergency Medicine, 988 F.Supp. 112, n. 8 (W.D.N.Y. 1997) ....... 22

District Court: Thevenot v. National Food Insurance Program, 620 F. Supp. 391, 396
   (W.D. La. 1985).......................................................................................................................... 17

District Court: United States ex rel. Fahner v. Alaska, 591 F. Supp. 794, 798 (N.D. Ill.
   1984)............................................................................................................................................ 17

District Court: United States ex rel. Luther v Consolidated Industries, Inc., 720 F. Supp.
   919, 923 (N.D. Ala. 1989) .......................................................................................................... 17

District Court: United States v. CFW Construction Co., 649 F. Supp. 616, 618 (D.S.C.
   1986)............................................................................................................................................ 17

District Court: United States v. Johnston, 138 F. Supp. 525, 527-28 (W.D. Okla. 1956)............ 17

Eleventh Circuit: United States v. Killough, 848 F.2d 1523, 1533 (11th Cir. 1988) .................. 17

Felton v. Walston & Co., Inc., 508 F.2d 577, 582 (2d Cir. 1974) ......................................... 10, 12

Fifth Circuit: United States ex rel. Weinberger v. Equifax, Inc., 557 F.2d 456, 46-61 (5th
   Cir. 1977).................................................................................................................................... 17

Fourth Circuit: Toepleman v. United States, 263 F.2d 697, 699 ................................................. 17

Glint Factors, Inc. v. Schnapp, 126 F.2d 207, 209 (2d Cir. 1942)................................................ 23

Goldman v. Belden, 754 F.2d 1059, 1065-66 (2d Cir. 1985) ...................................................... 16

Holdridge v. Heyer-Schulte Corporation of Santa Barbara, 440 F.Supp. 1088, 1093
   (N.D.N.Y. 1977) .................................................................................................................... 23, 24

IUE AFL-CIO Pension Fund v. Herrmann, supra, 9 F.3d at 1053 ............................................... 8

James X. Lynch C.O. v. Sid Slayton, et al., 1997 WL 176396 (N.D.N.Y. 1997) ....................... 22

Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).................................................. 16

Laza v. Reish, 84 F.3d 578, 581 (2d Cir. 1996)........................................................................... 22

Mikes v. Straus, 274 F.3d 687 (2d Cir. 2001).............................................................................. 18

Mills v. Polar Molecular, 12 F.3d 1170, 1174 (2d Cir. 1993) ....................................................... 8

Niles v. Nelson, 72 F.Supp.2d 13, 22 (N.D.N.Y. 1999) ............................................................... 24

Ninth Circuit: United States ex rel. Hagood v. Sanoma County Water Agency, 929 F.3d
   1416, 1421 (9tj Cir. 1991) ......................................................................................................... 17

Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990)..................................................................... 8, 9

Ryder Energy Distribution Corp. v. Merrill-Lynch Commodities, Inc., 748 F.2d 774, 779
   (2d Cir. 1984) ........................................................................................................................ 8, 16

Second Circuit: District Court:  Blusal Meats, Inc. v. United States, 638 F. Supp. 824,
   827 (S.D.N.Y. 1986).................................................................................................................... 17

Siegel v. Converters Transportation, Inc., 714 F.2d 213, 216 (2d Cir. 1983) ............................ 23

Sixth Circuit: District Court: United States ex rel Pogue v. American Healthcorp., Inc.
   914 F. Supp. 1507, 1509 (M.D. Tenn. 1996) ............................................................................ 17

Stevelman v. Alias Research, Inc., 174 F.3d 79, 86-87 (2d Cir. 1999) ....................................... 23

Tenth Circuit: Fleming v. United States, 336 F.2d 475, 480 (10th Cir. 1964) ............................ 17

Third Circuit: United States v. Tieger, 234 F.2d  589, 590 ........................................................ 17



Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 749 F. Supp. 869, 872 (N.D. Ill. 1990) .................................................................................................................... 11

United States ex rel. Bidani v. Lewis, 1999 WL 163053 (N.D.Ill. 1999) ...................................... 21

United States ex rel. Colunga v. Hercules Inc., 1998 WL 310481 (D.Utah 1998) ................. 20, 21

United States ex rel. Downy v. Corning, Inc., 118 F.Supp.2d 1160 (D. N.M. 2000) ........... passim

United States ex rel. Fallon v. Accudyne Corp., 921 F. Supp. 611, 628 (W.D. Wis. 1995) ........ 18

United States ex rel. Hyatt v. Northrop Corporation, 91 F.3d 1211 (9th Cir. 1996) .............. 20, 21

United States ex rel. Jaclyn Grandeau v. Cancer Treatment Centers of America, 2003 WL 21504998 * 1 (N.D. Ill. 2003) .............................................................................. 13

United States ex rel. Julie Alsaker v. Centracare Health System, Inc., 2002 WL 125089 (D.Minn. 2002) ................................................................................................. 22

United States ex rel. Karon Hill v. Morehouse Medical Associates, Inc., 2003 WL 22019936 *3 (11th Cir. 2003) ................................................................. 10, 11, 14

United States ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1051 (9th Cir. 2001) ...................................................................................................................... 9

United States ex rel. Marcus v .Hess, 317 U.S. 537, 549-550 (1943) ......................................... 17

United States ex rel. Minnesota Association of Nurse Anesthetists v. Allina Health System Corp., et al., 276 F.3d 1032 (8th Cir. 2002) .......................................... 16, 25

United States ex rel. Pogue v. Diabetes Treatment Centers of America, Inc., 238 F. Supp. 2d 258, 267 (D.C. 2002) ...................................................................... 10, 12, 14

United States ex rel. Rabushka v. Crane Co., 40 F.3d 1509, 1511 ................................................ 9

United States ex rel. Sanders v. East Alabama Healthcare Authority, 953 F. Supp. 1404, 1413 (M.D. Ala. 1996) ....................................................................................... 11

United States ex rel. Schuhardt v. Washington University, 228 F. Supp. 2d 1018, 1034 (E.D. Mo. 2002) ................................................................................................. 10

United States ex rel. Stinson v. Provident Life & Accident Ins. Co., 721 F. Supp. 1247, 1258-59 (S.D. Fla. 1989) .................................................................................. 20

United States ex rel. Stinson, Lyons, Gerlin & Bustamente, P.A. v. Blue Cross Blue Shield of Georgia, Inc., 755 F. Supp. 1040, 1052 ............................................ 11

United States ex rel. Stone v. Rockwell Corp., 144 F.R.D. 396 (D. Colo. 1992) ....................... 10

United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd., 6 F. Supp.2d 263 ........ 20

United States ex rel., Saaf v. Lehman Brothers, 123 F.3d 1307 (9th Cir. 1997) ......................... 20

United States v. American Precision Products Corp., 115 F. Supp. 823, 827-828 (D.N.J. 1953) .................................................................................................................... 18

United States v. Askanazi, 2001 WL 814940 (6th Cir. 2001) ....................................................... 2

United States v. Diamond, 657 F. Supp. 1204 (S.D.N.Y. 1987) .................................................... 3

United States v. Erickson, 75 F.3d 470 (9th Cir. 1996) ................................................................. 3

United States v. Fletcher, 928 F.2d 495, 498 .............................................................................. 21

United States v. Jacobson. 467 F. Supp. 507, 508 (S.D.N.Y. 1979) .............................................. 3

United States v. Kensington Hospital, 760 F. Supp. 1120 (E.D. Pa. 1991) ..................... 10, 11, 18

United States v. Medical Management Co., 799 F. Supp. 1348 * 4 (E.D.N.Y. 1992) ................. 13

United States v. Napco Intern'l, Inc., 835 F. Supp. 493, 495 (D. Minn. 1993) .............................. 9

United States v. Rapoport, 514 F. Supp. 519, 524 (S.D.N.Y. 1981) ........................................... 18

United States v. Rigdela State Bank, 357 F.2d 495, 497 (5th Cir. 1966) ..................................... 18

United States v. Rohleder, 157 F.2d 126, 129 (3d Cir. 1946) ...................................................... 18

United States v. Savarele, 19 F. Supp. 2d 58, 63 (W.D.N.Y. 1997) ............................................ 13

United States v. Silver, 384 F. Supp. 617, 620 (E.D.N.Y. 1974) .................................................. 18

United States v. Zulli, 418 F. Supp. 252, 253 (E.D. Pa. 1975)...................................................... 18

Wilkins ex rel. United States v. First National Bank of Cicero, 957 F.2d 1362, 1373 n.11
(7th Cir. 1992) ......................................................................................................................... 18

Wilkins ex rel. United States v. State of Ohio, 885 F. Supp. 1055 (M.D. Tenn. 1996) ............... 18

**Statutes**

31 U.S.C. § 3730(a)(2).................................................................................................................... 1

31 U.S.C. § 3731(b)(2) ................................................................................................................. 20

**Regulations**

42 C.F.R. 405.552............................................................................................................................ 25

## INTRODUCTION

Plaintiff Relator Michael Branigan was a Certified Registered Nurse Anesthetist ("CRNA") in the Anesthesiology Department at defendant Mary Imogene Bassett Hospital for almost ten years and Chief CRNA for part of that time. In plaintiff's detailed pleading,[1] Branigan blows the whistle on the fact that all of the defendant anesthesiologists in that hospital have been lying to their patients and to the United States Government for years about how anesthesia is provided to patients in the hospital. In particular, these anesthesiologists have represented to the Government (and their patients) in certified bills that they were "personally performing" and/or "personally participating" in the performance of, and providing anesthesia to, patients in connection with life-threatening surgeries when, in fact, those services were being provided completely by CRNA nurses. Indeed, the defendant anesthesiologists were not even in the operating room with their patients at any time while the surgery was being performed and the anesthesia was being administered. This was not an isolated occurrence; it was a systematic practice adopted by the anesthesiologists and their hospital whereby, in every surgical case, nurses provided anesthesia to the patients while physician anesthesiologists were occupied elsewhere.

It is undisputed, as we will show below, that this conduct did not and does not satisfy Medicare billing regulations and therefore disqualified the defendant anesthesiologists and their hospital from billing Medicare for these procedures. Administering anesthesia is a serious medical procedure which literally suspends the patient between life and death. Problems can occur in minutes or even seconds, and can result in serious injury and even death. Accordingly, to qualify for payment, Medicare imposes strict requirements on anesthesiologists to intensely monitor patients while they are unconscious and under the effects of anesthesia. These claims

---

[1] On February 15, 2002 Relator filed a Complaint under seal pursuant to 31 U.S.C. § 3730(a)(2). On March 5, 2003 the United Stated declined to intervene in this action. Subsequently, on May 5, 2003 Relator filed an Amended Complaint which is the subject of defendants' motion to dismiss.

were false because they falsely certified that the anesthesiologists were performing services when, in fact, they were not and that the patients were receiving a level of service which, in fact they were not.

Since defendants recognize they have no defense, they have fallen back on the classic "technical" defenses of a qui tam defendant. As we will show below, all of the technical defenses raised by the doctors and the hospital are without either factual or legal merit and could not possibly justify dismissal. But more important than what defendants do say in their motion papers is what is conspicuously absent from their motion papers. Defendants do not deny that their failure to be present in the operating rooms during surgery disqualified them from billing for "medical direction" to Medicare nor do they deny that they submitted thousands of bills to Medicare during the relevant time period which falsely certified that the doctors were either "medically directing," "personally performing" or "supervising" the anesthesia. Furthermore, defendants' have improperly submitted affidavits and exhibits that venture far outside the pleadings. Nevertheless, nowhere in these factual submissions do defendants deny the core allegation of the Complaint that the doctors were never in the operating rooms during surgeries during the relevant period. Instead, defendants engage in a long and circumlocutory argument to attempt to divert this Court from these core issues.

Stripped of its rhetoric and its misstatements of fact and law, defendants' argument appears to boil down to a claim that this Court should ignore the fact that the defendant doctors and hospital submitted thousands of false bills to Medicare for anesthesia services that they did not and could not have provided. This argument is ludicrous. Not only is such conduct actionable under the False Claims Act as a civil matter, in numerous cases the Government has prosecuted, convicted and jailed defendants who engaged in precisely this conduct. See, e.g., United States v. Askanazi. 2001 WL 814940 (6th Cir. 2001) (affirming anesthesiologists

2

indictment, conviction and sentencing to 3 years and order to pay restitution on mail fraud charges made in connection with his fraudulently billing for medical direction while absent from the operating room); Anesthesiology Affiliated v. Sullivan. 941 F.2d 678 (8th Cir. 1991) (finding knowing submission of 208 false claims to Medicare and disqualifying defendants from Medicare for a period of three years); United States v. Diamond, 657 F. Supp. 1204 (S.D.N.Y. 1987) (awarding judgment for false claims based on criminal conviction based on submission of 15 false HCFA forms to Medicare for a total of $594.08 in damages); United States v. Jacobson. 467 F. Supp. 507, 508 (S.D.N.Y. 1979) (recognizing defendant's earlier conviction under the criminal provisions of the False Claims Act for submitting 18 false Medicaid claims); accord, United States v. Erickson, 75 F.3d 470 (9th Cir. 1996) (upholding criminal conviction of hospital and ophthalmologist for submitting false bills to Medicare for anesthesia services under HCFA regulations).

Based upon the foregoing, it is clear that defendants' motions to dismiss should be summarily denied by this Court and that the Relator and the Government should be permitted to continue to prosecute this action, which is precisely what Congress intended when it passed the False Claims Act.

## RELEVANT FACTS

Michael Branigan, the Relator, is the former Acting Chief CRNA and Manager of the Anesthesiology Department at Defendant Bassett Healthcare.  In the Amended Complaint, which is the subject of defendants' motion to dismiss, Mr. Branigan makes the following specific and particular allegations regarding the defendants and their scheme to defraud Medicare.

Who are the defendants?  The defendants are Bassett Healthcare Corp., a non-profit corporation which operated defendant Mary Imogene Basset Hospital, and the anesthesiologists that were employed there during the relevant time period, L. Andrew Rauscher, James Anania,

3

Peter Gencarelli, Jonathan Greenberg, Timothy Lane, William Lee, Edward Palmer, Dean Robinson and Michael Newman. (*See* Amended Complaint ¶¶ 8 – 17).

What is the fraud? The Amended Complaint alleges that the hospital and the anesthesiologists employed by that hospital caused false and fraudulent claims to be submitted to Medicare for the provision of anesthesia which the physicians did not perform. (*See* Amended Complaint ¶ 20). In fact, the physician anesthesiologists who billed for these services were not even in the operating room while their patients were being operated upon. (*See* Amended Complaint ¶ 20). The Amended Complaint specifically and particularly alleges that each of the defendant anesthesiologists and the hospital which submitted their bills falsely billed for "choosing the anesthesia, injecting the anesthesia, monitoring the patient, intubating and extubating the patient." (*See* Amended Complaint ¶ 21).

The Amended Complaint further alleges that each of the individual defendant anesthesiologists named in the complaint adopted this practice as their standard practice and followed it in each individual case. (*See* Amended Complaint ¶ 21).

These allegations are not on information and belief, but rather based on the personal knowledge of the Relator who was the "Chief CRNA" and "not only personally witnessed these practices, on a daily basis, but was also personally told by the anesthesiologists who are the defendants in the case that it was their custom and practice to assign CRNAs to perform anesthesia services in the rooms instead of anesthesiologists." (*See* Amended Complaint ¶ 22).

The Amended Complaint goes on to state that these allegations are based on the Relator's "personal knowledge, based on his own eyes, that the defendant anesthesiologists did not perform the services they were billing for and that those services were performed instead by nurses." (*See* Amended Complaint ¶ 22).

4

The Amended Complaint further states that the relevant time period during which these false claims were submitted was the ten-year period between 1991 and 2001.

The Amended Complaint specifically and particularly sets forth that the fraud consisted of billing for services which did not satisfy even the lowest level of compensation for direct involvement in an anesthesia procedure.  The Amended Complaint sets forth the conditions necessary to bill for "medical direction" in Paragraph 23.  Those conditions are:

(a)     Performs a pre-anesthesia examination and evaluation;

(b)     Prescribes the anesthesia plan;

(c)     Personally participates in the most demanding procedures of the anesthesia plan including induction and emergence;

(d)     Ensures that any procedure in the anesthesia plan that he or she does not perform are performed by a qualified anesthetist;

(e)     Monitors the course of anesthesia administration at frequent intervals;

(f)     Remains physically present and available for immediate diagnosis and treatment of emergencies; and

(g)  Provides indicated post-anesthesia care.

The Amended Complaint goes on to specifically allege upon personal knowledge that in each of the cases billed by the defendants during the relevant time period, they failed to satisfy subsections (a), (b), (c), (e) and (f) of the regulation.  In particular, each of the doctors identified did not perform "pre-anesthesia examinations and evaluations, were not present in the operating room during anesthesia and surgery, and obviously, therefore, could not "personally participate in 'induction' or 'emergence'" or any other demanding procedure of the anesthesia plan and did not 'frequently' monitor anesthesia administration." (*See* Amended Complaint ¶ 25).

Since the Amended Complaint specifically alleges that in every case the doctors followed the practice of absenting themselves from the operating room during surgery and could not have performed these services, billing for these services obviously constituted false claims.[2]

The Amended Complaint goes on to detail why these false bills were submitted knowingly by the defendant physicians and hospitals. (*See* Amended Complaint ¶¶ 25 and 28).

The Amended Complaint specifically alleges that the defendant anesthesiologists and the defendant hospital between them submitted approximately 2200 Medicare claims a year at an average of $175 per claim in which they falsely certified that they had "medically directed" anesthesia procedures. (*See* Amended Complaint ¶ 25).

The Amended Complaint even specifically and particularly alleges that the false claims can be found in "electronic and written bills known as HCFA 1500 forms that were submitted between January 1991 and January 2001 to the hospital's Medicare carrier." (*See* Amended Complaint ¶ 26).

While the Amended Complaint contains representative examples of the false claims submitted by each defendant (*See* Amended Complaint ¶ 31), the Amended Complaint also notes that the specific dates and the documentation pertaining to the operations which form the basis of the claim are in the defendants' possession and will be obtained in discovery. (*See* Amended Complaint ¶ 26). Nevertheless, the Amended Complaint notes that the Relator has in his possession documents obtained from the Government which contain much of the pertinent billing information which is the subject of the false claims at issue.

The Amended Complaint specifically places the defendants on notice as to what monies are at issue and notes that all records are in their possession and can easily be calculated by them.

---

[2] Defendants' misplaced reference to New York State Department of Health "minimum" standards for anesthesia care (10 NYCRR § 405.13(a)(1)(iv)) at pg. 7 of their Memorandum in Support of their motion to dismiss, is entirely irrelevant to the allegations in Relator's Amended Complaint that they systematically falsely billed because they failed to meet Federally mandated Medicare billing reimbursement requirements.

(*See* Amended Complaint ¶ 26).  The Amended Complaint further notes that the defendant hospital, Mary Imogene Bassett Hospital, conspired with the defendant anesthesiologists to ensure that their false claims were not discovered.  (*See* Amended Complaint ¶ 27).  The Amended Complaint alleges that, with the knowledge of the hospital, their Chief of Anesthesia, defendant Rauscher, "instructed anesthesiologists to sign [operative] records long after the fact even though, in many cases, those anesthesiologists had not only never been in the operating room but not even on the floor where the surgery was taking place."  (*See* Amended Complaint ¶ 34).

The Amended Complaint further alleges that Rauscher organized the bills "on behalf of defendant Bassett Healthcare in order to maximize reimbursement to the defendant physicians and hospital from Medicare without regard to the actual truth of who had, in fact, provided the services."

Not being content to describe the fraudulent scheme and the manner in which it was carried out, the Amended Complaint goes on to specifically allege why these false statements were submitted knowingly by the defendants.  In particular, the Amended Complaint alleges in great detail specific federal regulations, GAO reports, Medicare rules, compliance manuals excerpts and correspondence between Medicare and the defendant anesthesiologists' national association all of which confirm that doctors are not permitted to bill for personally performing or medically directing procedures when they do not satisfy all seven of the required steps.

The Amended Complaint goes on to provide representative examples with respect to each defendant doctor by identifying the defendant by his or her provider number.  (*See* Amended Complaint ¶¶ 30 and 31).  For purposes of confidentiality and because certain of the data is solely within the possession of the defendants, only the specific dates and amounts of the bills, as well as the specific type of bills submitted, are identified in these examples.  (*See* Amended

7

Complaint ¶ 31). The Amended Complaint makes clear that included within the false claims are bills submitted for "personally performing" procedures, "medically directing" procedures and "supervising" procedures. (*See* Amended Complaint ¶ 31) all of which require, at a minimum, that the doctors meet medical direction requirements.

Despite these specific and particular allegations which identify every defendant at issue, the conduct which supports the allegations of fraud and submission of false claims, and the provision of representative examples of such false claims, defendants nevertheless ask this Court to dismiss this detailed and particularized Amended Complaint based on Rule 9(b). For the reasons set forth below, defendants' argument is unsupported by either the law or the specific facts of this case.

## LEGAL STANDARD

In attempting to convince this Court to dismiss a False Claims Act case such as this one on the pleadings, defendants must satisfy an extremely high standard. In evaluating this motion, this Court must accept as true all of the factual allegations of the Complaint. See Mills v. Polar Molecular, 12 F.3d 1170, 1174 (2d Cir. 1993) (citation omitted). Moreover, this Court must read the Complaint liberally, drawing all inferences in favor of the plaintiff. See IUE AFL-CIO Pension Fund v. Herrmann, supra, 9 F.3d at 1053. The District Court should deny the motion to dismiss unless it appears to a certainty that the plaintiff can prove no set of facts entitling him to relief. See Ryder Energy Distribution Corp. v. Merrill-Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) (citation omitted). This general rule applies to fraud cases and False Claims Act cases. See, e.g., IUE AFL-CIO Pension Fund, supra, 9 F.3d at 1053; accord, Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990) ("when a fraud is asserted, the general rule is simply applied in light of Rule 9(b) particularity requirements"). Defendants' motion does not even come close to satisfying this standard and, accordingly, should be denied by the Court.

8

## LEGAL ARGUMENT

**I.    THE AMENDED COMPLAINT FAR EXCEEDS THE REQUIREMENTS OF RULE 9(b) FOR A FALSE CLAIMS CASE.**

Faced with an indefensible case, defendants in this case, as do many false claim defendants, have resorted to Rule 9(b) motions claiming they cannot tell what they did wrong.[3] The motion is frivolous because the Amended Complaint clearly outlines their fraudulent scheme and incorporates by reference all of the specific claims at issue that are alleged to be fraudulent. Furthermore, the Amended Complaint details specific examples as to each defendant of the type of fraudulent bills that are alleged to have been submitted. This detail far exceeds the minimum requirements of Rule 9(b). Furthermore, the undersigned counsel has recently litigated a virtually identical case in the State of Minnesota, United States ex rel Minnesota Association of Nurse Anesthetists v. Allina Health System Corp., et al., Docket No. 4-96-734, and both the District Court and the Eighth Circuit expressly rejected the defenses defendants offer here. Indeed, the conduct involved it that case was less egregious because, the physicians actually came to the operating room and induced the patient before leaving, never to return. Even under these circumstances, the Court held the allegations of the Amended Complaint, if true, stated a cause of action under the False Claims Act. See United States ex rel Minnesota Association of Nurse Anesthetists, supra, Docket No. 4-96-734, 6 (D. Minn. Sept. 24, 1997) (attached as Exhibit J to the Declaration of Christopher Iannicelli, submitted herewith).

In evaluating the Amended Complaint under Rule 9(b) in the False Claims Act context, this Court must consider the fact that the False Claims Act statute was for the benefit of the public and intended to be interpreted liberally.[4] See United States ex rel. Rabushka v. Crane Co.,

---

[3] The lie to this statement is shown by the fact that defendants have no trouble submitting detailed arguments (albeit unsuccessful ones) attempting to rebut the allegations they claim not to understand in their motion papers.

[4] Court's have disagreed as to whether the specificity requirements of Rule 9(b) even apply to qui tam actions, compare United States v. Napco Intern'l, Inc., 835 F. Supp. 493, 495 (D. Minn. 1993) (applying 9(b)) with United

40 F.3d 1509, 1511 ("False Claims Act is intended to be liberally construed").  While Rule 9(b)

requires specificity, it is mitigated by and must be read in connection with, Rule 8 which requires

a short and plain statement and the simplicity and flexibility contemplated by the Rules must be

taken into account when reviewing a Complaint for 9(b) particularity.  See, e.g., United States ex

rel. Pogue v. Diabetes Treatment Centers of America, Inc., 238 F. Supp. 2d 258, 267 (D.C.

2002); Felton v. Walston & Co., Inc., 508 F.2d 577, 582 (2d Cir. 1974); United States ex rel.

Downy v. Corning, Inc., 118 F.Supp.2d 1160 (D. N.M. 2000); United States v. Kensington

Hospital, 760 F. Supp. 1120 (E.D. Pa. 1991); United States ex rel. Karon Hill v. Morehouse

Medical Associates, Inc., 2003 WL 22019936 *3 (11th Cir. 2003).

Whereas in many False Claims Act cases, including this one, the breadth of the

allegations include thousands of claims over many years "the complaint need not cite specifics

for every transaction." United States ex rel. Schuhardt v. Washington University, 228 F. Supp.

2d 1018, 1034 (E.D. Mo. 2002) (citation omitted).  However, a Relator "must provide some

representative samples of the fraud which details specifics of who where and when." Id.; See

also, United States v. Kensington Hospital, supra, 760 F. Supp. at 1125; United States ex rel.

Pogue v. Diabetes Treatment Centers of America, Inc., supra, 238 F. Supp. 2d at 268

("sufficiently detailed description of the specific scheme and its falsehoods" satisfied Rule 9(b)

where the complaint covers a multi-year period); United States ex rel. Lee v. SmithKline

Beecham, Inc., 245 F.3d 1048, 1051 (9th Cir. 2001) (finding where fraudulent scheme is

sufficiently identified, no specific transaction need be identified to satisfy Rule 9(b)); United

States ex rel. Karon Hill v. Morehouse Medical Associates, Inc., 2003 WL 22019936 * 3 (11th

---

States ex rel. Stone v. Rockwell Corp., 144 F.R.D. 396 (D. Colo. 1992) (holding that Rule 9(b) does not apply since
Relator may not have information in possession of the Government and requiring plaintiff to provide the level of
detail "normally required under Rule 9(b) would be contrary to the policy that the Federal Rules of Civil Procedure
are to be construed liberally in the interest of attaining justice").  Even if the Court were to determine that 9(b) did
apply to this qui tam action, Relator has satisfied the requirements.

Cir. 2003) (the complaint must set forth a representative sample "detail[ing] ... the defendants'

allegedly fraudulent acts, when they occurred, and who engaged in them.") (quoting United

States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1310 (11th Cir. 2002), cert. denied,

537 U.S. 1105 (2003)).

    As the foregoing cases have recognized, it is not necessary to file a 2,000 page Complaint

or to present all of the evidence the Relator intends to present at trial in order to satisfy the

relatively modest requirements of Rule 9(b).  See United States ex rel Pogue, supra, 238 F. Supp.

2d at 268.  Moreover, if some of the information required is in third parties' or the

Government's hands, the Court should consider this in determining whether to permit a

Complaint to go forward against a Rule 9(b) challenge.  See, e.g.,  United States ex rel. Karon

Hill v. Morehouse Medical Associates, Inc., supra, 2003 WL 22019936 at * 3; United States ex

rel. Stinson, Lyons, Gerlin & Bustamente, P.A. v. Blue Cross Blue Shield of Georgia, Inc., 755

F. Supp. 1040, 1052 (S.D. Ga.), reconsideration granted, 755 F. Supp. 1055, 1058-59 (S.D. Ga.

1990); United States ex rel. Sanders v. East Alabama Healthcare Authority, 953 F. Supp. 1404,

1413 (M.D. Ala. 1996).  Similarly, if the allegations involve conspiracy and corporate insiders

where the information is more likely in the defendants' possession than the plaintiff's, less

specificity is required at the initial stages of the proceeding.  See, e.g., United States ex rel.

Minnesota Association of Nurse Anesthetists v. Allina Health System Corp, et al., Docket No. 4-

96-734, 6 (D.Minn. September 24, 1997); United States ex rel. Downy v. Corning, Inc., 118

F.Supp.2d 1160, 1173 (D. N.M. 2000); United States v. Kensington Hospital, supra, 760 F.

Supp. at 1125-26 ("9(b) was not intended to require plaintiff to know every detail before he or

she could plead fraud"); Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 749 F. Supp. 869,

872 (N.D. Ill. 1990) (where defendants are all corporate insiders, plaintiff's complaint properly

alleged conspiracy to commit fraud if it sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer the allegations).

As most cases which have considered the issue have concluded, the key question for the Court is whether the plaintiff has outlined the fraudulent scheme sufficiently to place the defendants on notice of the claims against them and to ensure that baseless speculative claims are not permitted to proceed. See, e.g., United States ex rel. Pogue, supra, 238 F. Supp. 2d at 267-68 (where Relator set out a sufficiently detailed description of specific scheme, representative examples were not required to satisfy Rule 9(b));[5] Felton v. Walston & Co., Inc. 508 F.2d 577, 581 (2d Cir. 1974) (one of the main purposes of Rule 9(b) is to apprise the defendant of the claim against him and of the acts relied upon as constituting the fraud charged).

In United States ex rel. Minnesota Association of Nurse Anesthetists v. Allina Health System Corp, et al., Docket No. 4-96-734 (D.Minn. September 24, 1997) the Complaint included identical allegations against defendants and outlined a similar scheme to defraud Medicare by using nurses to perform anesthesia instead of doctors. The Court concluded that the Complaint, including the conspiracy Count,[6] survived Rule 9(b) because it set forth some representative samples of the fraud and detailed the fraudulent scheme sufficiently to place the defendants on notice of the claims against them.

Similarly, in this case, the Relator has identified each defendant that he claims has submitted false claims, he has identified how the false claims were submitted through certified Health Care Finance Association 1500 Forms (or their electronic equivalent), and he has given

---

[5] The defendants misstate the law in this Circuit when they claim that a Relator must have knowledge of all facts pertaining to the fraud and must include them in the Complaint. The standard, instead, is that the Relator must have a good-faith basis for alleging that fraud has been committed. Given the fact that the Relator personally observed the fraud being committed on numerous occasions over a ten-year period, Relator has personal knowledge that bills were, in fact, submitted by the hospital for the services in question and the Relator, prior to filing the Complaint, confirmed that bills had, in fact, been submitted, the Relator plainly had a good-faith basis for filing this lawsuit.

[6] In the Minnesota case, the conspiracy alleged was far more widespread, including 65 doctors and five hospitals, yet the court denied defendants' 9(b) motion.

12

representative examples as to each defendant as to their submission of false claims.  In this case, because of the all-encompassing allegations, *i.e.*, that the defendants failed to satisfy medical direction requirements or personal performance requirements in every time-billed case which they billed during this time period because they were never in the operating room and never performed either induction or emergence (*See* Amended Complaint at ¶¶ 21-22), this is plainly sufficient to satisfy the requirements of Rule 9(b) in this Circuit for a False Claims Act case. See, e.g., United States v. Savarele, 19 F. Supp. 2d 58, 63 (W.D.N.Y. 1997) (denying 9(b) motion finding that Rule 9(b) "does not require plaintiffs to plead extensive facts . . . only the circumstances of the fraud.")(citation omitted); United States v. Medical Management Co., 799 F. Supp. 1348 * 4 (E.D.N.Y. 1992) (where defendants are placed on "fair notice of the claims against them, Rule 9(b) is satisfied").

In this regard, the Court should disregard defendants' ridiculous claim that plaintiff identifies no examples of false claims submitted by the defendants.  Those examples appear in paragraph 38 of the Amended Complaint and are taken directly from the Government records of defendants' own bills.  Defendants are identified by their Medicare billing numbers with which they should be intimately familiar.  Moreover, the Amended Complaint incorporates by reference computer discs containing every bill submitted by the defendants to Medicare during the relevant time period which is alleged to be fraudulent.  These discs have recently been supplied to the defendants at their request and are currently in their possession.  See Declaration of Christopher Iannicelli, ¶ 16.  The fact that Relator, for confidentiality reasons, set forth defendants' provider numbers instead of their names in the Amended Complaint does not affect this analysis.

Moreover, defendants are simply incorrect that 9(b) requires a plaintiff to set forth every specific claim that is false, the doctor who submitted the claim and the date it was submitted.  Although Relator has done so, given the clear and detailed explanation of the fraudulent scheme

13

and the fact that every claim submitted was fraudulent (*See* Amended Complaint ¶¶ 21-22, 25,

33), even if <u>no</u> representative examples were given, this Court could still find that the Amended

Complaint satisfies Rule 9(b). <u>See, e.g.,</u> <u>United States ex rel. Jaclyn Grandeau v. Cancer</u>

<u>Treatment Centers of America, 2003 WL 21504998 * 1 (N.D. Ill. 2003)</u> (complaint which is

hardly a model of clarity but pleads specific circumstances and general fraudulent scheme

satisfies 9(b) even where no specific representative examples of false claims are provided);

<u>accord, United States ex rel. Pogue, supra, 238 F.Supp. 2d at 267-68</u> (where Relator set out a

sufficiently detailed description of specific scheme, representative examples were not required to

satisfy Rule 9(b)); <u>United States ex rel. Karon Hill, supra, 2003 WL 22019936</u> (the Relator was

original source of information and set out fraudulent scheme. Failure to provide specific

representative examples does not require dismissal under Rule 9(b)). The court's comments in

<u>Karon Hill</u> regarding this issue are instructive: "Hill asserted that she was unable to provide

patient names or the exact dates that claims were submitted to the government, because

documents containing such information are within MMA's exclusive possession. Failure to

allege patient names and the exact dates that claims were submitted to the government, however,

is not fatal to a claim under the FCA. Our precedent requires only that "a plaintiff . . . plead . . .

the details of the defendant's allegedly fraudulent acts, when they occurred and who engaged

him." (citation note omitted). Under the facts of this case, the question of "who engaged" the

fraudulent acts, is answered by the names of the MMA employees and physicians who altered

the CPT and diagnosis codes, not the patient names . . . additionally to require Hill to provide

the exact dates that claims were submitted to the government would require that she violate

patient confidentiality by copying private records. As we are not prepared to encourage

violations of patient confidentiality, we find that Hill need not provide the exact dates that claims

14

were submitted to the government to satisfy Rule 9(b)." <u>United States ex rel. Karon Hill, supra,</u> <u>2003 WL 22019936</u> at n. 8.

In summary, defendants need only review their own billing records or the Government's records of their bills, both of which are in their own possession, which Relator has incorporated in his Amended Complaint by reference, to determine how many bills they submitted to Medicare during the relevant time period and the dates and amounts of those bills. The Amended Complaint alleges that every one of the bills submitted by the hospital for anesthesia services performed by defendant doctors was fraudulent because they could not have qualified for reimbursement under the applicable Medicare regulations. Accordingly, the defendants are well warned of the allegations against them. They know the documents at issue, they know the false statements alleged and they, like the defendants in <u>United States ex rel. Minnesota</u> <u>Association of Nurse Anesthetists v. Allina Health System Corp., et al.</u>, have been given ample notice in order to defend this case.

Based upon the foregoing, we respectfully submit that defendants' motion to dismiss a portion or all of the Complaint based on Rule 9(b) should be denied in its entirety.

## II.    THE GOVERNMENT WAS DAMAGED BY DEFENDANTS' FRAUD. MOREOVER, OVERPAYMENTS ARE NOT AN ESSENTIAL ELEMENT OF LIABILITY UNDER THE FALSE CLAIMS ACT.

Defendants spend much of their brief disputing the allegation in plaintiff's Amended Complaint that the Government was damaged by defendants' false claims. As the facts will show, defendants had many motives in addition to money to falsely represent that doctors rather than nurses were providing anesthesia in the operating room, including avoiding potential malpractice liability and satisfaction of third party payer requirements among others. It should be noted that defendants do not even dispute that the Government overpaid for bills submitted between 1991 and 1998. Moreover, defendants' argument as to later periods is without merit as

15

a matter of fact and law in any event.  As a preliminary matter, defendants' motion depends upon the improper injection of factual disputes into a motion on the pleadings and, for that reason alone, should be rejected by this Court.  See, e.g., Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim...[i]f a district court wishes to consider additional material [outside of the complaint], Rule 12(b) requires it to treat the motion as one for summary judgment under Rule 56, giving the party opposing the motion notice and opportunity to conduct necessary discovery and to submit pertinent material.")[7] (citing Goldman v. Belden, 754 F.2d 1059, 1065-66 (2d Cir. 1985); Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984)).

Equally importantly, defendants' arguments as both a factual and legal matter are erroneous.  Similar arguments were made by the defendants in United States ex rel. Minnesota Association of Nurse Anesthetists v. Allina Health System Corp., et al., 276 F.3d 1032 (8th Cir. 2002) in the summary judgment context and rejected by the Eighth Circuit.  See Id. at 1051-1052 (holding that allegations similar to those in this case, that doctors billed for procedures that were actually performed by nurses, raised jury question regarding damage to the government).  In its amicus brief filed in support of the appellant in the Minnesota Association case, the Government put the lie to the defendants' argument here.  (A copy of the relevant excerpts of that brief are attached as Exhibit L to the Declaration of Christopher Iannicelli, Esq. submitted herewith.)  Of pertinent note to defendants' argument here are the following excerpts from that brief:

> "To the extent that the District Court meant, instead, that the Government is not financially damaged when an MDA [anesthesiologist] bills as medical direction of a single procedure although the procedure was a personally performed case, the Court is likewise incorrect, e.g., GAO report to Congressional Commission, Medicare: payments for medically directed anesthesia services should be reduced 24-26 (March 1992) (charts listing various procedures and showing that in each

---

[7] No discovery has been conducted in this case since the Magistrate has not even yet held a conference.  Defendants' motion should be denied as a matter of law for the reasons set forth herein.  However, in no event should the Court consider defendant's factual showing until plaintiff has been permitted to conduct discovery.



case, MDA's payment for personally performed case exceeds payment to CRNA for personally performed case)." <u>Id.</u> at 18.

       * * *

"Moreover, the majority of the Relator's claims . . . if proven would establish actual damages to the Government since the Relator is contending that the defendants were not eligible, on multiple grounds, to submit claims for which they received payment. <u>See</u>, <u>S. Rep. No. 99-345</u>, at 9 (1986), reprinted in <u>1986 U.S.C.C.A.N. 5266, 5274</u> ("a false claim for reimbursement under the Medicare, Medicaid or similar program is actionable under the Act, * * * and such claims may be false even though the services are provided as claimed if, for example, the claimant is ineligible to participate in the program"). Claims submitted by ineligible (e.g. disbarred or unlicensed) providers cause financial damages to the Government in the amount of the claim for payment <u>notwithstanding</u> that their services are provided as claimed and the Government might have paid another eligible provider the same amount, had such a provider submitted the claims." <u>Id.</u> at 18-19.

Having rejected the defendants' argument that billing as alleged in this case did not cause the Government damage, the Government's <u>amicus</u> brief goes on to point out that neither Article III nor the False Claims Act requires that the Government prove damage or be damaged in order to collect penalties under the False Claims Act. <u>Id.</u> 19 – 21. As the Government points out:

"An individual who misrepresents compliance with such criteria causes injury to the federal program, by diverting its benefits to persons other than the intended recipients and obstructing of statutory purpose." <u>Id. at 21</u>.

And later:

"The practical effect of the District Court's reasoning in this case would be to foreclose the United States from bringing an enforcement action under the False Claims Act to recover civil penalties alone. Such a result cannot be squared with the language and purpose of the False Claims Act." <u>Id. at 22</u>.

It is for this reason that Courts in this Circuit, the United States Supreme Court and ten other Circuits have held that Relators and the Government have standing to pursue a False Claims Act case for statutory penalties even if <u>no</u> specific overpayments can be shown. [8]

---

[8] U.S. Supreme court: <u>United States ex rel. Marcus v .Hess, 317 U.S. 537, 549-552 (1943)</u>; <u>Second Circuit: District Court: Blusal Meats, Inc. v. United States, 638 F. Supp. 824, 827 (S.D.N.Y. 1986)</u>; <u>United States v. Rapoport, 514 F. Supp. 519, 524 (S.D.N.Y. 1981)</u>; <u>United States v. Silver, 384 F. Supp. 617, 620 (E.D.N.Y. 1974)</u>, aff'd mem., <u>515 F.2d 505 (2d Cir. 1975)</u>; <u>Third Circuit: United States v. Tieger, 234 F.2d 589, 590 &n.4 (3d Cir.)</u>, cert. denied, <u>352 U.S. 941 (1956)</u>; <u>United States v. Rohleder, 157 F.2d 126, 129 (3d Cir. 1946)</u>; <u>District Court: United States v.</u>

The cases relied upon by defendants, in particular <u>Mikes v. Straus, 274 F.3d 687 (2d Cir.</u>

<u>2001),</u> have no application in the context of a motion on the pleadings and do not stand for the

propositions cited.  Those cases merely stand for the proposition that the false statement must be

"material," <u>i.e.,</u> must be significant enough to impact the payment decision (a judicially imposed

requirement in some circuits which appears nowhere in the statute).  Clearly, if the

anesthesiologists and their hospital had accurately represented to the Government that the

anesthesiologists did <u>not</u> perform <u>any</u> of the required steps for medical direction and that they

were not even in the operating room during the surgeries but nevertheless requested that the

Government reimburse them, this would have had a significant negative impact upon the

Government's reimbursement decision, <u>i.e.,</u> it would <u>not</u> have paid these bills.  The fact that

some <u>other</u> provider (<u>i.e.,</u> a CRNA) provided a different service is irrelevant to this inquiry.  <u>See,</u>

<u>e.g.,</u> Government <u>amicus</u> brief at 19 ("claims submitted by ineligible . . . providers caused

financial damages to the Government in the amount of the claim for payment notwithstanding

---

<u>Kensington Hospital, 760 F. Supp. 1120, 1227 (E.D. Pa. 1991); United States v. Zulli, 418 F. Supp. 252, 253 (E.D.</u>
<u>Pa. 1975); United States v. American Precision Products Corp., 115 F. Supp. 823, 827-828 (D.N.J. 1953); Fourth</u>
<u>Circuit: Toepleman v. United States, 263 F.2d 697, 699 (4th Cir. ), cert. denied sub nom. Cato v. United States, 359</u>
<u>U.S. 989 (1959); District Court: United States v. CFW Construction Co., 649 F. Supp. 616, 618 (D.S.C. 1986); Fifth</u>
<u>Circuit: United States ex rel. Weinberger v. Equifax, Inc., 557 F.2d 456, 46-61 (5th Cir. 1977), cert. denied, 434 U.S.</u>
<u>1035 (1978); United States v. Rigdela State Bank, 357 F.2d 495, 497 (5th Cir. 1966); District Court: Thevenot v.</u>
<u>National Food Insurance Program, 620 F. Supp. 391, 396 (W.D. La. 1985); Sixth Circuit: District Court: United</u>
<u>States ex rel Pogue v. American Healthcorp., Inc. 914 F. Supp. 1507, 1509 (M.D. Tenn. 1996); Wilkins ex rel.</u>
<u>United States v. State of Ohio, 885 F. Supp. 1055 (M.D. Tenn. 1996); Wilkins ex rel. United States v. First National</u>
<u>Bank of Cicero, 957 F.2d 1362, 1373 n.11 (7th Cir. 1992); District Court: United States ex rel. Fahner v. Alaska, 591</u>
<u>F. Supp. 794, 798 (N.D. Ill. 1984); United States ex rel. Fallon v. Accudyne Corp., 921 F. Supp. 611, 628 (W.D.</u>
<u>Wis. 1995); Ninth Circuit: United States ex rel. Hagood v. Sanoma County Water Agency, 929 F.3d 1416, 1421 (9tj</u>
<u>Cir. 1991); Tenth Circuit: Fleming v. United States, 336 F.2d 475, 480 (10th Cir. 1964), cert. denied, 380 U.S. 907</u>
<u>(1965); District Court: United States v. Johnston, 138 F. Supp. 525, 527-28 (W.D. Okla. 1956); Eleventh Circuit:</u>
<u>United States v. Killough, 848 F.2d 1523, 1533 (11th Cir. 1988); District Court: United States ex rel. Luther v</u>
<u>Consolidated Industries, Inc., 720 F. Supp. 919, 923 (N.D. Ala. 1989); United States ex rel. Stinson v. Provident</u>
<u>Life & Accident Ins. Co., 721 F. Supp. 1247, 1258-59 (S.D. Fla. 1989) (citing Blusal Meats, Inc. v. United States,</u>
<u>638 F. Supp. 824, 827 (S.D.N.Y. 1986)); Court of Claims: Brown v. United States, 524 F.2d 693, 706 (Ct. Cl. 1975).</u>

that their services are provided as claimed and that the Government might have paid another

eligible provider the same amount"); Anesthesiologists Affiliated v. Sullivan, 941 F.2d 678 (8th

Cir. 1991) (the fact that defendants may have been entitled to be reimbursed for some different

service than that claimed if a true and correct bill had been submitted does not reduce

defendants' damages for falsely billing for services they did not provide as claimed).

Additionally, it should be noted that there is no factual evidence that the hospital would

have billed or would have been paid for providing non-medically directed CRNA services during

the time period in question, much less what amount they would have been paid.[9]  For example,

as the Amended Complaint outlines, the policy at the hospital was to indicate on the anesthesia

records, that an anesthesiologist was involved in every surgery.  This claim that all anesthesia

services were performed by anesthesiologists was communicated, not only to patients, but also to

third-party payers such as the Government.  Billing for non-medically directed anesthesia by a

CRNA, without any involvement of an anesthesiologist, would have violated that policy.  All of

the foregoing are highly disputed fact issues which are completely inappropriate for this Court to

address in connection with a motion on the pleadings where no discovery has even been

conducted.

III.     **SECTION 3731(b) OF THE FALSE CLAIMS ACT PROVIDES A TEN YEAR
         STATUTE OF LIMITATIONS PERIOD WHICH RELATOR HAS SATISFIED,
         THEREFORE RELATOR'S CLAIMS ARE NOT TIME BARRED.**

Defendants also attempt to avoid responsibility for their fraudulent acts which occurred

prior to 1996, by seeking dismissal of Relator's claims on statute of limitations grounds.  Under

the False Claims Act, the statute of limitations is tolled and expanded from six to ten years where

the Relator and/or the Government do not discover defendant's fraud more than three years

---

[9] Indeed, defendants' billing records contained on two diskettes provided by the Government to Relator confirm that
at no time during the time period in question did the hospital bill for non-medically directed anesthesia services
performed by a CRNA.

before the filing of the Complaint.  31 U.S.C. § 3731(b)(2).[10]  This is to prevent defendants from profiting from concealment of their fraud.  Defendants argue that the three year tolling provision of 31 U.S.C. § 3731(b)(2) does not apply to Relator in this action because the Government has not yet elected to intervene.  Defendants' argument is inconsistent with the False Claims Act and inconsistent with the reasoning of many courts which have considered the issue and have held that a private qui tam Relator may avail himself of the three-year tolling provision, even if the Government chooses not to intervene in the action.  See, e.g., United States ex rel. Hyatt v. Northrop Corporation, 91 F.3d 1211 (9th Cir. 1996); United States ex rel. Colunga v. Hercules Inc., 1998 WL 310481 (D.Utah 1998); United States ex rel. Downy v. Corning, Inc., 118 F.Supp.2d 1160 (D.N.M. 2000); United States ex rel., Saaf v. Lehman Brothers, 123 F.3d 1307 (9th Cir. 1997).

     Courts have recognized that the purpose of the three-year tolling provision is to prevent defendants from benefiting from the concealment of their fraudulent acts, whether that concealment is from the Relator and/or the Government.  See United States ex rel. Downy v. Corning, Inc., 118 F.Supp.2d 1160, 1169-70 (D.N.M. 2000) ("the Congressional intent behind the tolling provision is to ensure the government's rights are not lost through successful deception on the part of the FCA defendant.  This intent is no different where the lawsuit is a qui tam suit in which the United States has chosen not to intervene, and nothing in the FCA indicates the government's rights should be more at risk simply because the government has decided to refrain from intervention.")

---

[10] The statute at issue, 31 U.S.C. § 3731(b)(2), provides:
  (b) A civil action under section 3730 may not be brought –
  (1) more than 6 years after the date on which the violation of Section 3729 is committed, or
  (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

The reasoning of the district court cases, in particular United States ex rel. Thistlethwaite

v. Dowty Woodville Polymer, Ltd., 6 F. Supp.2d 263 (S.D.N.Y.) relied upon by defendants to

support their argument that the three-year tolling provision does not apply in this case, has been

criticized by other courts because it ignores the underlying structure and intent of the FCA. Id.

(the approach advocated for in Thistlethwaite "has the advantage of relying on the plain language

of the statute. However, this approach's insistence that only an "official of the United States"

may take advantage of the tolling provision ignores the structure of the FCA, which often refers

only to the United States when it is obvious Congress intended the reference to include

relators.")  The more well-reasoned decisions, regarding application of the three-year tolling

provision, have held that a Relator can invoke the three-year tolling provision and disagree only

as to whether or not the statute is tolled by the Relator's knowledge or the Government's

knowledge. See, e.g., United States ex rel. Colunga v. Hercules, Inc., 1998 WL 310481 (D.Utah

1998) (holding that the three-year limitations period begins to run not when the Relator obtains

knowledge of the FCA violation, but when knowledge of that violation is communicated to the

"official of the United States" referred to in 3731(b)(2)); United States ex rel. Hyatt, supra, 91

F.3d at 1214-18 (holding that the three-year limitations period found in 3731(b)(2) begins to run

when the relator has knowledge, or should have knowledge, of the facts concerning the

violation); accord, United States ex rel. Bidani v. Lewis, 1999 WL 163053 (N.D.Ill. 1999).

Relator respectfully submits that this Court should follow the approach adopted in Colunga

which accurately captures the intent of 3731(b)(2).  As the Court in United States ex rel. Downy

v. Corning, Inc., supra, 118 F.Supp.2d at 1169-70 observed, the Court in Colunga reasoned that

this interpretation of the tolling provision was appropriate because "a relator who discovers a

false claim may be reluctant to act for a number of reasons, including lack of resources, timidity,

or lack of knowledge about the FCA and its procedural requirements." Id.  However, regardless

21

of whether this Court decides to measure the statute of limitations period from the time the Government learns of the fraud or the time the Relator does so, it is a reasonable inference from the Amended Complaint that Branigan didn't discover the fraud until he was appointed Chief CRNA near the end of his tenure.  Therefore, Relator may avail himself of the three-year tolling period in either case.[11]

### A.  The Amended Complaint Relates Back to the Complaint.

Failing to properly understand the purpose of Fed. R. Civ. P. 15(c) and its liberal relation back standard, defendants also seek to sidestep liability for submitting false claims by claiming immunity from their fraud, for all of the false claims they submitted to the government between February 19, 1996 (six years before the date of filing of the Complaint) and May 2, 1997 (six years before the date of filing of the Amended Complaint) because defendants claim the "Amended Complaint does not relate back" to the initial Complaint.  They are wrong.

Relator filed the initial complaint under seal on February 19, 2002 thereby initiating the civil action and tolling the statute of limitations as of that date.  See United States ex rel. Mary J. Downy v. Corning, Inc., 118 F. Supp.2d 1160, 1171 (D.N.M. 2000) (holding that in FCA actions, the filing of the complaint, not the unsealing of the complaint, tolls the statute of limitations).  Shortly following the unsealing of the Complaint, Relator amended his Complaint to better clarify and specify claims made in the initial Complaint.  The Complaint was amended as of right pursuant to Fed. R. Civ. P. 15(a), prior to service of the Complaint on the defendants

---

[11] Defendants make the additional argument that Relator's conspiracy claim is also time-barred because Relator claims it "stretches back at least 10 years".  This argument also fails because, counter to defendants' assertion to the contrary, the prevailing law in this Circuit is that the statute of limitations in a civil damages action for conspiracy begins to run after the last overt act that is alleged to further the conspiracy is committed.  See United States v. Fletcher, 928 F.2d 495, 498 (2d Cir.), cert. denied, 502 U.S. 815 (1991) (limitations period begins to run after the last overt act in furtherance of the main goals of the conspiracy); accord, Daniel v. American Bd. of Emergency Medicine, 988 F.Supp. 112, n. 8 (W.D.N.Y. 1997).  Therefore, Relator may attempt to prove the underlying conspiratorial agreement by offering evidence of overt acts which occurred through 2001.

and <u>prior</u> to their filing of an answer or any other responsive pleading.[12]  Accordingly, this Court

need only concern itself with whether the claims made in the <u>Amended</u> Complaint meet the

requirements of Rule 9(b).

Furthermore, the Amended Complaint satisfies both the letter and the purpose of the

"relation-back" requirements.  Pursuant to Rule 15(c) the <u>central</u> inquiry a court must make in

determining if a claim relates back will focus on the notice given "by the *general fact situation*

*set forth in the original pleading*" to the opponent, in this case the defendants.  <u>See, e.g.,</u>

<u>Holdridge v. Heyer-Schulte Corporation of Santa Barbara, 440 F.Supp. 1088, 1093 (N.D.N.Y.</u>

<u>1977)</u> ("The major consideration in deciding whether an amendment relates back is whether

adequate notice is given to the opposing party by the *general fact situation* alleged in the original

pleading.") (<u>citing</u> <u>Rosenberg v. Martin</u>, 478 F.2d 520, 526 (2d Cir. 1973), <u>cert. denied</u>, 414 U.S.

872 (1973)) (emphasis added); <u>accord</u>, <u>Stevelman v. Alias Research, Inc., 174 F.3d 79, 86-87 (2d</u>

<u>Cir. 1999)</u>.  In this case, the initial Complaint was never even <u>served</u> on the defendants, and only

provided to them as a professional courtesy <u>after</u> the Amended Complaint was filed.  Because the

defendants did not even see the initial Complaint until after the Amended Complaint was filed

and served, they could not have been prejudiced by the clarification of Relator's claims in the

Amended Complaint.  Therefore, defendants cannot invoke the protection of Rule 15(c).

Moreover, even under the established law of the "relation back" doctrine, contrary to

defendants' assertion, the claims in the Amended Complaint regarding the defendants failure to

---

[12]  Under these circumstances, the original Complaint was superseded and, henceforth, of no legal effect.  <u>See, e.g.,</u>
<u>James X. Lynch C.O. v. Sid Slayton, et al., 1997 WL 176396 (N.D.N.Y. 1997)</u> ("amended complaint supersedes the
complaint it modifies"); <u>United States ex rel. Julie Alsaker v. Centracare Health System, Inc., 2002 WL 125089</u>
<u>(D.Minn. 2002)</u> ("it is well established that an amended complaint supersedes an original complaint and renders the
original complaint without legal effect"); <u>accord, Laza v. Reish, 84 F.3d 578, 581 (2d Cir. 1996)</u> ("once an amended
complaint is interposed, the original pleading no longer performs any function in the case").  Therefore, defendants'
argument that the Amended Complaint does not relate back to the initial Complaint since the initial Complaint does
not meet the heightened pleading requirements of Rule 9(b) must fail.  Whether or not the substantive claims made
in the initial Complaint meet these requirements is of no consequence because the initial Complaint is "without legal
effect".

satisfy the Medicare reimbursement requirements for medical supervision and personal

performance relate back to the initial Complaint.  The law is clear that Rule 15(c) should be

liberally construed for statute of limitations purposes to allow amended complaints to relate back

to initial complaints, absent abuse of or prejudice to the opponent.  See, e.g., Siegel v. Converters

Transportation, Inc., 714 F.2d 213, 216 (2d Cir. 1983) ("We held over forty years ago that Rule

15(c) was to be liberally construed, particularly where an amendment does not "allege a new

cause of action but merely … make[s] defective allegations more definite and precise.") (quoting

Glint Factors, Inc. v. Schnapp, 126 F.2d 207, 209 (2d Cir. 1942)); accord, Niles v. Nelson, 72

F.Supp.2d 13, 22 (N.D.N.Y. 1999) ("Rule 15 is to be liberally construed") (citations omitted).

Under Rule 15(c), an amendment relates back to the date of the original pleading whenever "the

claim or defense asserted in the amended pleading arose out of the conduct, transaction or

occurrence set forth or attempted to be set forth in the original pleading."  The rationale of the

rule is that, "once litigation involving particular conduct or a given transaction has been

instituted, the parties are not entitled to the protection of the statute of limitations against the

later assertion by amendment of defenses or claims that arose out of the same conduct,

transaction or occurrence as set forth in the original pleading."  6A Charles Allen Wright, Arthur

R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1496 at 64 (2d ed. 1990).  As the

Second Circuit has recognized, the doctrine of relation back applies "when an amendment adds a

new theory of recovery based on the same transaction or occurrence originally pleaded" or to

"correct specific factual details or to make more specific what has already been alleged".

Holdridge v. Heyer-Schulte Corporation of Santa Barbara, 440 F.Supp. 1088, 1093 (N.D.N.Y.

1977) (citations omitted).

   The Amended Complaint in this case plainly satisfies this liberal standard for relation

back of allegations.  The Amended Complaint merely clarifies claims which arise out of the

24

identical conduct and series of transactions referred to in the original Complaint.  In particular, in the original Complaint, the specific time period of 10 years from 1991 to 2001, a specific fraudulent scheme, failure to be present in the operating room during anesthesia cases and specific allegations of submissions of false claims in HCFA 1500 Forms in connection with this scheme were alleged.  The Amended Complaint simply clarifies and adds more detail concerning the types of fraudulent bills that were submitted, i.e. medical direction, personal performance and supervision.  Given the fact that defendants were never served with nor notified of the original Complaint, such allegations satisfy not only the intent but the letter of relation-back doctrine and, accordingly, defendants' objections in this regard should be rejected and their motion pertaining to this issue denied.

Defendants additionally argue that the Amended Complaint incorrectly alleges that medical supervision requires an anesthesiologist to satisfy the seven steps of medical direction. Since plaintiff's allegations must be assumed to be true for purposes of this motion, defendants' argument is without merit.  The Complaint alleges that the defendants satisfied none of the seven steps of medical direction.  While it is true, at sometime during this period, medical supervision required a lesser standard of treatment than medical direction, it nevertheless required the physician to satisfy all of the medical direction steps with the exception of steps three and seven. See 42 C.F.R. 405.552, Exhibit M of Declaration of Christopher Iannicelli, submitted herewith. Moreover, the precise manner in which supervision was reimbursed during this period was constantly changing and therefore whether a particular claim satisfied the medical supervision requirements at a particular time is a fact issue which cannot be resolved at the pleading stage.[13]

---

[13] See United States ex rel. Minnesota Association of Nurse Anesthetists v. Allina Healthcare et al., 276 F.3d 1032, 1056 (8th Cir. 2002) (whether or not defendants knew or should have known they were not satisfying the emergence requirement in regulation was a fact issue to be decided by the jury).

## CONCLUSION

For all the foregoing reasons, we respectfully submit that defendants' motion to dismiss or, in the alternative, for summary judgment should be denied in all respects.

Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP
Attorneys for Plaintiff Michael Branigan

By:_____
David S. Stone (8580)
A Member of the Firm

Dated: September 12, 2003

26